IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 4, 2020 Session

## CLARENCE HIGHT, ET AL. v. DONALD RYAN TRAMEL, ET AL.

**Appeal from the Chancery Court for Davidson County**
No. 17-101-I  Patricia Head Moskal, Chancellor

_____

### No. M2019-00845-COA-R3-CV

_____

This case involves an attempt by a former shareholder of a corporation to bring suit on behalf of the corporation on the basis of a contractual assignment. The trial court granted summary judgment to the defendants, concluding that there was no valid assignment of the corporation's rights and that any individual claims asserted by the former shareholder were barred by the applicable statutes of limitations. The former shareholder appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY W. ARMSTRONG, J., joined.

David R. Grimmett, Franklin, Tennessee, for the appellant, Clarence Hight, individually and on behalf of Action Security Systems, Inc.

John O. Belcher, Nashville, Tennessee, for the appellee, A.C.E. Technologies, LLC, f/k/a A.C.E.T. Newco., LLC, Successor By Merger to A.C.E. Alarms, Inc.

William J. Haynes, III, Nashville, Tennessee, for the appellee, Donald Ryan Tramel.

### MEMORANDUM OPINION[1]

_____

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall

## I. FACTS & PROCEDURAL HISTORY

Action Security Systems, Inc., is a corporation that installs security systems. It was incorporated around 1994. The three original shareholders of Action Security were Clarence Hight, his wife, and his daughter. Mr. Hight served as the president of the company.

In 2014, Action Security filed a lawsuit against one of its former employees, Donald Tramel, and one of its competitors, A.C.E. Alarms, Inc. Essentially, the complaint alleged that Mr. Tramel left the employment of Action Security to work for A.C.E. Alarms and committed acts in violation of his employment agreement. The complaint alleged that Mr. Tramel and A.C.E. Alarms were soliciting customers and employees of Action Security. The complaint alleged various causes of action based on these facts, including breach of contract, tortious interference with employment relationships, and other related claims.

Unbeknownst to the defendants, Mr. Hight and his wife and daughter subsequently sold their shares of Action Security to an individual named Eric Roberts while the case was pending. The defendants learned of this fact during Mr. Hight's deposition in 2016. The following exchange occurred:

Q. Okay. Who is Eric Roberts?
A. He is a person that has purchased my company.
Q. Who is the current owner of Action?
A. Eric Roberts.
Q. When was that purchase completed?
A. September 12, 2014.
Q. Do you have any ongoing role with Action?
A. No.
Q. Okay. Are you Action's appointee to handle this lawsuit?
A. Yes.
Q. Okay. Eric has approved you being the spokesperson for this lawsuit?
A. No, no. Eric has no knowledge of this lawsuit that I'm aware of. He might.
Q. As we sit here today, who owns Action Security Systems, Inc.?
A. Eric Roberts.
Q. What is your role in Action Systems, Inc.?
A. At this point, nothing. I'm broke.
Q. What is your wife's –
A. None.

be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Q. --ownership? What is your daughter's ownership?
A. None.

Mr. Hight confirmed that the purchase and sale agreement between him and Mr. Roberts did not address the litigation, nor did any other writing between them. When asked what would happen if Action Security was awarded a judgment in the litigation, Mr. Hight replied that he was "hoping it would go to me." When asked what he expected to happen if a judgment was entered against Action Security on the pending counterclaim, Mr. Hight responded, "Be his problem then, wouldn't it?"

On March 14, 2016, Mr. Hight and Mr. Roberts executed a "Settlement Agreement" to resolve various "disputes" that had arisen since the sale of the company. At the outset, the Settlement Agreement stated that it was "by and between Clarence Hight (hereinafter, 'Hight') and Eric Roberts (hereinafter, 'Roberts')." The Settlement Agreement required Mr. Roberts to make certain payments to Mr. Hight for balances owed from the sale of Action Security. It also required Mr. Roberts to make certain payments in connection with the sale of a separate limited liability company. The Settlement Agreement contained covenants not to sue and other miscellaneous provisions. Finally, the Settlement Agreement contained the following provisions that are relevant to this appeal:

> ACTION SECURITY VS. ACE ALARMS, DAVIDSON COUNTY CHANCERY COURT
> 4. The parties hereto agree that any and all claims made by or against Action Security Alarms, Inc. regarding the lawsuit filed in Davidson County Chancery Court on or about May of 2014 were made on behalf of Action Security Alarms, Inc. while Action Security Alarms, Inc. was owned and controlled by Hight. All parties hereto agree that any and all judgments which may be obtained as a result of that lawsuit shall be owed to Hight personally and shall be paid immediately to Hight if paid to Action Security Alarms, Inc, purposefully or inadvertently.
> 5. The parties hereto further agree that any costs encumbered or any judgments obtained against Action Security Alarms, Inc as a result of the abovementioned lawsuit shall be paid by Hight.
>
> NON-DISPARAGEMENT; CONFIDENTIALITY
> 6. The parties hereto agree that they will not make any statements, either oral or written, which slander or disparage any party to this Agreement. The parties agree not to disclose this Agreement, the terms of this Agreement or the existence of a settlement, unless it becomes necessary to enforce the obligations contained herein, unless required to do so by subpoena or other court order, in order to obtain tax and/or accounting advice, for any other legally required governmental reason or for purposes of seeking entry of the Agreed Judgment or filing a lawsuit as contemplated above. The parties shall

be entitled to disclose to anyone that they have resolved their dispute to their satisfaction. The parties hereto specifically agree that the terms of this agreement may be shown to opposing counsel in the lawsuit referenced above in paragraphs 5-6 for the sole purpose of showing that Hight has standing in order to pursue that legal action on behalf of Action Security Systems, Inc.

The Settlement Agreement was signed by Clarence Hight and Eric Roberts in spaces designated for their individual names.

The suit filed by Action Security was voluntarily nonsuited and dismissed on August 30, 2016. On February 1, 2017, Mr. Hight filed this lawsuit individually and "on behalf of Action Security Systems, Inc." Mr. Hight alleged that Action Security was a corporation existing in Tennessee, and he would later concede that Action Security is not a party to this lawsuit. Rather, Mr. Hight alleged that he was authorized to sue on behalf of Action Security based on the Settlement Agreement between himself and Roberts. Specifically, he alleged that the Settlement Agreement assigned to him "all proceeds and interest from any litigation between Action Security and the Defendants as a result of this lawsuit." Mr. Hight further alleged that "this action is filed within one (1) year after this matter was non-suited pursuant to Rule 41.01 of the Tennessee Rules of Civil Procedure."

Mr. Hight again named as defendants the former employee of Action Security, Donald Tramel, and the competitor company, A.C.E. Technologies, LLC f/k/a ACET Newco, LLC, Successor by Merger to A.C.E. Alarms, Inc. ("A.C.E. Alarms"). Mr. Hight asserted a claim for breach of contract against Mr. Tramel individually, based on his employment agreement with Action Security. Mr. Hight also asserted claims against both defendants for unfair competition and violation of the Tennessee Uniform Trade Secrets Act.[2] Finally, the complaint included a section entitled "Individual Claims by Clarence Hight," in which he incorporated all prior allegations and alleged that "the pecuniary business value of Action Security was diminished" as the sole and proximate result of the defendants' actions, causing Mr. Hight to suffer "a loss of value" when he sold the corporation.

Both defendants filed motions for summary judgment. They alleged that Mr. Hight lacked standing to pursue claims on behalf of Action Security because there was no valid assignment of claims by Action Security. The defendants argued that the Hight-Roberts Settlement Agreement did not effectuate a valid assignment of any claims belonging to Action Security because Action Security was not a party to the Settlement Agreement. The defendants argued that Action Security was a distinct legal entity from its sole shareholder and that the corporation would have to be a party to any agreement assigning its rights.

---

[2] The complaint also included a claim for intentional interference with business relationships, but Mr. Hight later conceded that this claim should be dismissed.

Alternatively, the defendants argued that the language of the Settlement Agreement only assigned rights to the proceeds of the litigation, not the right to pursue the claims. Finally, the defendants argued that any individual claims asserted by Mr. Hight were barred by the respective statutes of limitations because he became aware of Tramel's conduct in 2013 and did not file this suit until February 1, 2017.

In response to the motions for summary judgment, Mr. Hight maintained that he was authorized to pursue claims for Action Security based on a contractual assignment in the Settlement Agreement. He insisted that this was "clearly the intent of the parties to the Settlement Agreement."[3] Mr. Hight argued that the contractual assignment also gave him the same right to rely on the saving statute as Action Security. As for his individual claims, Mr. Hight admitted that by April 2013, he knew that Tramel had gone to work for A.C.E. Alarms, suspected he had copied files from Action Security's computers, and hired a computer expert to investigate. He acknowledged that during 2013, he believed Tramel and A.C.E. Alarms were soliciting Action Security's customers and employees and using its trade secrets. Still, Mr. Hight argued that the statute of limitations was tolled pursuant to the "continuing violations doctrine" for so long as Tramel continued to be employed by A.C.E. Alarms. Because Tramel worked for A.C.E. Alarms until February 2014, Mr. Hight argued that his complaint was timely filed on February 1, 2017.

After a hearing, the trial court entered an order granting summary judgment to the defendants on all claims. Notwithstanding the inconsistent responses by Mr. Hight regarding whether Action Security was a party to the Settlement Agreement, the trial court found that the Settlement Agreement "speaks for itself and evidences that the parties to the Settlement Agreement are Clarence Hight and Eric Roberts." The trial court found that Action Security was "not a party or signatory to the Settlement Agreement." As a result, the trial court concluded that there was no valid assignment of Action Security's claims. The trial court reasoned that the rights and causes of action asserted in the prior litigation belonged to Action Security and yet "Action Security was not a party to the Settlement Agreement or assignor of the purported assignment." The court explained that the Settlement Agreement did not manifest any intent *on the part of Action Security* to transfer any of its right or claims. According to the trial court, the corporation was a separate and distinct entity from its shareholder, and its "rights as a corporation [could not] be validly transferred or assigned by a private agreement between one of the former shareholders and the current shareholder." Additionally, the trial court concluded that the language of the Settlement Agreement merely addressed Mr. Hight's right to receive any judgments awarded and did not clearly assign Action Security's claims. In the absence of a valid assignment, the trial court found that Mr. Hight lacked standing to assert any claim for breach of contract, violation of the Uniform Trade Secrets Act, or unfair competition.

---

[3] In response to the motion for summary judgment filed by A.C.E. Alarms, Mr. Hight admitted that Action Security was not a party to the Settlement Agreement. However, he denied this same fact in response to the motion filed by Tramel.

The trial court also found that such claims were barred by the statutes of limitations. Mr. Hight admittedly hired an investigator around March 2013 to examine Action Security's computer systems and determine if Tramel copied information. Thus, the trial court found that the latest date by which Action Security knew or should have known of the facts giving rise to its claims was March 2013. The trial court explained that the statute of limitations for violations of the Uniform Trade Secrets Act was three years, Tenn. Code Ann. § 47-25-1707, and the statute of limitations for the unfair competition claim would be either one year under Tennessee Code Annotated section 47-18-110 or three years for injury to personal property under Tennessee Code Annotated section 28-3-105. As such, the trial court found that the statutes of limitations expired, at the latest, in March 2016. Therefore, the complaint filed on February 1, 2017, came too late. Because there was no valid assignment of Action Security's rights, the trial court noted that Mr. Hight could not "step into Action Security's shoes" for purposes of the saving statute.

Lastly, regarding Mr. Hight's "Individual Claims" for loss of business value, the trial court construed the claim as one for injury to personal property, subject to a three-year statute of limitations pursuant to Tennessee Code Annotated section 28-3-105(a). Based on the same timeline, the trial court found that Mr. Hight knew or should have known the facts giving rise to the claims by March 2013. Therefore, the statute of limitations expired in March 2016, and the claims asserted in the February 1, 2017 complaint were time-barred. The trial court granted both defendants' motions for summary judgment dismissing all claims. Mr. Hight timely filed a notice of appeal.

## II.    ISSUES PRESENTED

Mr. Hight raises the following issues, which we have slightly restated, for review on appeal:

1.      Whether the trial court erred in finding no valid assignment between Action Security and Clarence Hight despite contractual language stating Mr. Hight had standing to pursue a legal action on behalf of Action Security;

2.      Whether the trial court erred in finding Mr. Hight could not go forward with a breach of contract action on behalf of Action Security;

3.      Whether the trial court erred in finding that Mr. Hight could not utilize the saving statute on behalf of Action Security;

4.      Whether the trial court erred in finding that Mr. Hight could not go forward with personal claims against the defendants due to the statute of limitations despite the continuing violations doctrine.

- 6 -

For the following reasons, we affirm the decision of the chancery court and remand for further proceedings.

## III. STANDARD OF REVIEW

A trial court's decision on a motion for summary judgment is reviewed de novo with no presumption of correctness. *Kershaw v. Levy*, 583 S.W.3d 544, 547 (Tenn. 2019) (citing *Beard v. Branson*, 528 S.W.3d 487, 494-95 (Tenn. 2017)). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. A moving party who does not bear the burden of proof at trial can meet its burden of production "'either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense.'" *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 887 (Tenn. 2019) (quoting *Rye v. Women's Care Ctr. of Memphis*, 477 S.W.3d 235, 264 (Tenn. 2015)). Then, "[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party." *Id.* at 889 (quoting *Rye*, 477 S.W.3d at 265).

## IV. DISCUSSION

### A. Assignment

Here, the defendants moved for summary judgment on the basis that Mr. Hight was not authorized to assert claims on behalf of Action Security in the absence of a valid contractual assignment.[4] On appeal, Mr. Hight maintains that he was authorized to bring suit on behalf of Action Security based on "the plain language of a settlement agreement between the new owner of Action Security and Mr. Hight." We respectfully disagree.

At the outset, we note that an "assignment" is simply a transfer of property or some other right from one person to another. *Action Chiropractic Clinic, LLC v. Hyler*, 467 S.W.3d 409, 411 (Tenn. 2015). "To determine whether a particular assignment is valid, principles of general contract law apply." *Id.* We must "'look to the plain language of the contract and [] ascertain and effectuate the parties' intent as reflected in that language.'" *Id.* at 412 (quoting *West v. Shelby Cnty. Healthcare Corp.*, 459 S.W.3d 33, 41-42 (Tenn. 2014)). "For an assignment to be valid, it 'must contain clear evidence of the intent to transfer rights, must describe the subject matter of the assignment, must be clear and unequivocal, and must be noticed to the obligor.'" *Id.* (quoting 6 Am.Jur.2d *Assignments*

---

[4] Mr. Hight did not raise any issue, in the trial court or on appeal, regarding the defendants' standing to challenge the validity of the assignment.

§ 82). "[T]he intent of the assignor to transfer the right must be 'manifest.'" *Id.* (quoting *Collier v. Greenbrier Developers, LLC*, 358 S.W.3d 195, 201 (Tenn. Ct. App. 2009)).

In this case, Mr. Hight alleges that Action Security Systems, Inc., a corporation, assigned its rights to him through the act of its shareholder. "'It is generally accepted that the corporation is an entity distinct from its shareholders with rights and liabilities not the same as theirs individually and severally. The corporation and its directors and officers are similarly not the same personality.'" *Keller v. Estate of McRedmond*, 495 S.W.3d 852, 866 (Tenn. 2016) (quoting 12B Fletcher Cyc. Corp. § 5911). Even if all the stock in the corporation is owned by a single stockholder, the corporation and its stockholder remain "distinct legal entities." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 216 (Tenn. 2012). Courts "respect the separate legal status of a corporation and its shareholders." *Cambio Health Sols., LLC v. Reardon*, 213 S.W.3d 785, 790 (Tenn. 2006). Where parties have deliberately chosen to do business in corporate form, for tax purposes, accounting, or other reasons, "they cannot disregard the corporate form 'at their convenience.'" *Keller*, 495 S.W.3d at 882 (quoting *Hadden v. City of Gatlinburg*, 746 S.W.2d 687, 689-90 (Tenn. 1988)).

"As its own legal entity," a corporation can sue and be sued and contract in its own name. *Keller*, 495 S.W.3d at 866. "'Whether or not a particular contract shows a clear intent that one of the parties was contracting as an individual or in a representative capacity, must be determined *from the contract itself*.'" *MLG Enterprises, LLC v. Johnson*, 507 S.W.3d 183, 186 (Tenn. 2016) (quoting *Lazarov v. Klyce*, 195 Tenn. 27, 255 S.W.2d 11, 14 (1953)). Generally, "[a] corporate officer's signature, preceded by the corporation's name and followed by words denoting the officer's representative capacity, binds only the corporation."[5] *Bill Walker & Assocs., Inc. v. Parrish*, 770 S.W.2d 764, 770 (Tenn. Ct. App. 1989). On the other hand, the signature of an individual, "'without limiting or descriptive words before or after it, is the universal method of signing a contract to assume a personal obligation.'" *Associated Shopping Ctr. Properties, Ltd. v. Hodge*, No. M2010-00039-COA-R3-CV, 2011 WL 1025753, at *6 (Tenn. Ct. App. Mar. 22, 2011) (quoting *Lazarov* 255 S.W.2d at 12); *Dewitt v. Al-Haddad*, No. 89-394-II, 1990 WL 50727, at *8 (Tenn. Ct. App. Apr. 25, 1990); *see, e.g.*, *Mudd v. Goostree*, No. M2012-00957-COA-R3-

---

[5] We note that "a corporate officer may agree to be contractually bound in both his corporate and individual[] capacities, and may execute a contract in his corporate capacity and guarantee it in his individual capacity." *Malone v. Lasater*, No. M2014-00777-COA-R3-CV, 2015 WL 6970568, at *5 (Tenn. Ct. App. Mar. 12, 2015). "In most cases, a representative who signs a contract is not personally bound to the contract. A representative who signs a contract may be personally bound, however, when the clear intent of the contract is to bind the representative." *84 Lumber Co. v. Smith*, 356 S.W.3d 380, 382 (Tenn. 2011) (citations omitted). Thus, in that situation, courts must bear in mind "the general rule regarding the signature of a corporate representative" in conjunction with our supreme court's statement regarding "the clear intent of the parties as gleaned from the Contract itself." *Wise N. Shore Properties, LLC v. 3 Daughters Media, Inc.*, No. E2013-01953-COA-R3-CV, 2014 WL 2854258, at *2 (Tenn. Ct. App. June 23, 2014).

CV, 2013 WL 1402157, at *1 (Tenn. Ct. App. Apr. 5, 2013) (holding that the individual owner of a corporation who signed his individual name on a lease was personally liable).

Here, the Settlement Agreement begins by stating:

> This Settlement Agreement (hereinafter, 'the Agreement') is entered into as of the last date signed below (hereinafter, 'the Effective Date'), by and between Clarence Hight (hereinafter, 'Hight') and Eric Roberts (hereinafter, 'Roberts')[.]

After addressing various other issues between Mr. Roberts and Mr. Hight, it stated that "[t]he parties hereto" agreed that any judgments as a result of the Action Security litigation would be "owed to Hight personally" and paid to him, or paid by him in the event of a judgment against Action Security. The confidentiality provision further stated that "[t]he parties hereto specifically agree that the terms of this agreement may be shown to opposing counsel in the lawsuit referenced above in paragraphs 5-6 for the sole purpose of showing that Hight has standing in order to pursue that legal action on behalf of Action Security Systems, Inc." However, the Settlement Agreement was signed only by Eric Roberts, in the space designated "Eric Roberts."[6]

Considering the unequivocal language of the Settlement Agreement between Mr. Roberts and Mr. Hight, we conclude that Mr. Roberts was contracting only in his individual capacity. There is simply no language indicating that Action Security, the corporation, was a party to the Settlement Agreement. The Settlement Agreement clearly identifies the only parties as Mr. Roberts and Mr. Hight. More specifically, there is no language effectuating a valid assignment by Action Security. As we noted above, to constitute a valid assignment, "the intent of the assignor to transfer the right must be 'manifest.'" *Action Chiropractic*, 467 S.W.3d at 412. As the trial court aptly noted, the Hight-Roberts Settlement Agreement did not manifest any intent *on the part of Action Security* to transfer any of its rights or claims.[7] The rights and claims asserted in the prior litigation belonged to Action Security, and its "rights as a corporation [could not] be validly transferred or assigned by a private agreement between one of the former shareholders and the current shareholder." Thus, we affirm the trial court's dismissal of the claims Mr. Hight asserted on behalf of Action Security.[8] Because Mr. Hight was not authorized to pursue these

---

[6] We note that the signature on the space for "Eric Roberts" appears to be illegible, but Mr. Hight does not argue that Mr. Roberts wrote anything other than his name.

[7] In *Bowers v. Estate of Mounger*, 542 S.W.3d 470, 483 (Tenn. Ct. App. 2017), we held that the sole member of an LLC had standing to pursue claims as the assignee of the LLC because he had executed an assignment *on behalf of the LLC* assigning the LLC's rights to himself. Here, the purported assignment was not executed by or on behalf of the entity.

[8] On appeal, Mr. Hight attempts to raise an argument regarding apparent authority. However, this argument was never raised in the trial court. Therefore, we will not consider it on appeal. *See Black v. Blount*, 938 S.W.2d 394, 403 (Tenn.1996) ("Under Tennessee law, issues raised for the first time on appeal

claims, the issue raised on appeal regarding the assignability of the right to use the saving statute is pretermitted.

## B.    *Individual Claims*

The complaint's description of the "Individual Claims by Clarence Hight" was sparse.  Aside from reincorporating all of the allegations of the complaint, Hight alleged that "the pecuniary business value of Action Security was diminished" and that "Hight suffered a loss of value caused by the Defendants' wrongful actions" upon selling the corporation.  Again, the trial court construed the claim as one for injury to personal property subject to a three-year statute of limitations pursuant to Tennessee Code Annotated section 28-3-105(a).  It found that Mr. Hight knew or should have known the facts giving rise to his individual claim by March 2013.  Therefore, the statute of limitations expired in March 2016, and the individual claim asserted in the February 1, 2017 complaint was time-barred.

The only argument Mr. Hight raises on appeal with respect to this issue is whether the "continuing violations doctrine applies" to toll the statute of limitations.  Relying on employment discrimination law, he argues that the defendants' actions should be viewed as a continuing violation that extended for as long as Mr. Tramel was employed at the competitor.

"The continuing violation doctrine was developed by federal courts interpreting federal anti-discrimination statutes, particularly Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII")."  *Booker v. The Boeing Co.*, 188 S.W.3d 639, 643 (Tenn. 2006).  It is "a federal common law doctrine[.]"  *Nunn v. Tenn. Dep't of Corr.*, 547 S.W.3d 163, 179 (Tenn. Ct. App. 2017) (citing *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 740 (5th Cir. 2017)).  The doctrine "essentially allows a plaintiff to bring a claim for discriminatory conduct that occurs outside the limitations period if the discriminatory conduct is sufficiently related to conduct occurring within the limitations period."  *Booker*, 188 S.W.3d at 643.  However, "[t]his doctrine has only been applied by Tennessee courts in employment cases involving some type of discrimination[.]"  *Snake Steel, Inc. v. Holladay Constr. Grp., LLC*, No. M2019-00322-COA-R3-CV, 2020 WL 365304, at *8 n.3 (Tenn. Ct. App. Jan. 22, 2020), *perm. app. granted* (Tenn. June 4, 2020) (declining to apply the continuing violation doctrine where the party offered "no argument or citation to any authority for its application to cases involving statutory penalties"); *see also Jackson v. City of Cleveland*, No. E2015-01279-COA-R3-CV, 2016 WL 4443535, at *5 (Tenn. Ct. App. Aug. 22, 2016) ("Our courts have recognized only two situations in which the continuing violation doctrine applies.").

---

are waived."); *Mitchell v. Kindred Healthcare Operating, Inc.*, No. W2008-01643-COA-R3-CV, 2009 WL 1684647, at *6 (Tenn. Ct. App. June 17, 2009) (finding an argument regarding implied authority was waived where it was not argued in the trial court).

- 10 -

The continuing violation doctrine is not a generally applicable "exception" to statutes of limitation, as Mr. Hight argues on appeal. Therefore, the trial court did not err by failing to apply it to Mr. Hight's "individual claims."

## V. CONCLUSION

For the aforementioned reasons, the decision of the chancery court is hereby affirmed and remanded. Costs of this appeal are taxed to the appellant, Clarence Hight, for which execution may issue, if necessary.

_____
CARMA DENNIS MCGEE, JUDGE